IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDA WOODWORTH, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>STONEBRIDGE LIFE INSURANCE CO., )<br>)<br>Defendant. )<br>) | Case No. CV06-286-S-EJL<br><br>MEMORANDUM ORDER |

    Pending before the Court in the above-entitled matter are Defendant Stonebridge Life Insurance Company's ("Stonebridge") motion for summary judgment (Docket No. 10) and Plaintiff Linda Woodworth's motion for partial summary judgment (Docket No. 16). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

### Factual Background

    The facts of this case are tragic and sad. On July 15, 2004, Plaintiff's husband, Roger F. Woodworth, was killed in an aviation accident. Roger Woodworth had been a pilot the majority of his life and was a flight instructor at the time of his death. On July 15, 2004, Roger Woodworth was the certified flight instructor to the other individual in the plane, Jack Knudsen. Mr. Knudsen was not rated to fly the multi-engine aircraft, although he owned the aircraft. As the certified flight instructor, Roger Woodworth completed each training flight with his student. The log books indicate it was Mr. Knudsen's third instructional flight in the aircraft. It is undisputed that Mr. Knudsen was a licensed pilot with single engine land,

instrument and commercial ratings. Mr. Knudsen had purchased the multiengine aircraft for his own use. However, of the two persons on board, Mr. Woodworth was the only person rated to fly the multiengine aircraft when crashed on July 15, 2004. It is unknown who was at the controls at the time of the crash.

The National Transportation Safety Board, who investigated the accident, identified Mr. Woodworth as the "first pilot" of the aircraft. All other agencies that investigated the accident listed Mr. Woodworth as the flight instructor of the aircraft. Plaintiff has acknowledged that at the time of the accident, Mr. Woodworth was acting as a certified flight instructor in the aircraft that crashed.

After the accident, Plaintiff, Roger Woodworth's wife, submitted a claim for benefits under the Stonebridge Certificate of Insurance which insured Mr. Roger Woodworth against injury and death subject to stated exclusions. The insurance policy was purchased in 1992 and the policy provided notice to the insured the policy excluded coverage for air travel while acting as "a pilot or crew member." The policy does not define the terms "pilot" or "crew member." The Certificate states:

> No benefit shall be paid for Loss caused by or resulting from:
> . . .
> 6. An Injury while the Covered Person is acting as a pilot or crew member in an aircraft.

Defendant Stonebridge denied the requested benefits citing that the above exclusion applied. Plaintiff filed her complaint in state court on December 28, 2005 and the matter was removed to federal court. Plaintiff alleges breach of an accidental death insurance contract for denial of benefits. Cross claims for summary judgment on the issue of liability under the policy are pending before the Court.

## Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

MEMORANDUM ORDER - Page 2
07ORDERS\WOODWORTH_SJ.WPD

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would

---

[1] See also, Rule 56(e) which provides, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

## Analysis

The questions for this Court are: is the aviation exclusion language of the policy ambiguous and was Mr. Woodworth either a pilot or crew member of the aircraft that crashed on July 15, 2004?

The aircraft accident occurred in Oregon. Mr. Woodworth was an Idaho resident. Both parties cite the Court to Idaho law on insurance contracts. The law is well-settled and the Court finds the basic contract principals would be the same for either Idaho or Oregon. An insurance policy is a contract between the individual and the insurer. Automobile Club Ins. Co., Inc. v. Tyrer, 560 F. Supp 755 (D. Idaho 1983). The burden is on the insurer to prove that an asserted exclusion applies. Perry v. Farm Bureau Mutual Insurance Co., 936 P.2d 1342 (Idaho Ct. App. 1997). "In the absence of ambiguity, contracts for insurance must be construed as any other and understood in their plain, ordinary and proper sense, according to the meaning derived from the plain wording of the contract." J.S. Casey v. Highlands Ins. Co., 600 P.2d 1387, 1391 (1979) (citations omitted). The court cannot create a liability not assumed by the insurer nor make a new contract for the parties. Miller v. World Ins. Co., 283 P.2d 581 (Idaho 1985). Not every term in a policy needs to be defined. Nat't Union & Fire Ins. Co. v. Dixon, 112 P.3d 825 (2005).

> Undefined terms in an insurance contract must be given their plain, ordinary and popular meaning. To determine the plain meaning of an undefined term, we look to standard English dictionaries. The language of insurance contracts is to be interpreted in accordance with the way it would be understood by the average person rather than in a technical sense.

Port of Seattle v. Lexington Ins. Co., 48 P.3d 334, 337 (Wash. 2002). Finally, if the court determines an insurance policy is ambiguous, it is construed against the insurer. Schilling v. Allstate Ins. Co., 980 P.2d 1014 (Idaho 1999); Erikson v. Nationwide Mutual Ins. Co., 543 P.2d 841 (1975).

Plaintiff claims there are genuine issues of material fact regarding whether Mr. Woodworth was acting as a pilot or crew member at the time of the accident and that the policy is ambiguous. Defendant claims the policy is not ambiguous and using the plain ordinary definitions to the terms, the exclusion applies.

The Court finds the exclusion language used in the insurance policy is not ambiguous. The policy clearly intends to exclude coverage when a person is acting as a pilot or crew member of an aircraft. This is a standard aviation exclusion language for accident insurance policies. Plaintiff maintains that even if the exclusion language is not ambiguous, there are no clear definitions to apply to the terms, so the policy is ambiguous and must be construed against the insurance company. The Court respectfully disagrees. Since the terms "pilot" and "crew member" are not defined in the policy, the Court will determine if it is possible to apply the plain, ordinary definitions to the terms used in the policy.

"Pilot" is defined by Webster's dictionary as "a person who flies or is qualified to fly an aircraft or spacecraft." Merriam-Webster's Collegiate Dictionary (11th ed. 2003). "Crew member" is not defined in the dictionary, but the parties seem to agree that it is a person who has some designated responsibility on a flight (i.e., such as a flight attendant or navigator). Therefore, the Court finds there are plain and ordinary definitions to these terms used in the policy and they are not ambiguous terms.

Next, Plaintiff argues Mr. Woodworth was not acting as a pilot when he was acting as a flight instructor nor was he acting as a crew member even if he was examining Mr. Knudsen's flight skills. The Court finds neither of these arguments to be persuasive.

First, Mr. Woodworth was the only pilot on board "rated" to fly the plane, he was acting as the flight instructor for the flight and had ultimate responsibility for the flight. Second, the National Transportation Safety Board that investigates airplane accidents, determined Mr. Woodworth was the "first pilot" and Mr. Knudsen the "second pilot" for purposes of its investigation. Just being one of two pilots in the plane is sufficient for the

exclusion to apply as it does not say "the pilot" it says "a pilot." Third, under the Federal Aviation Administration Code of Federal Regulations, Mr. Woodworth was the "pilot in command."

> "Pilot in Command" means the person who:
> (1) Has final authority and responsibility for the operation and safety of the flight;
> (2) Has been designated as a pilot in command before and during the flight; and
> (3) Holds the appropriate category, class, and type rating, if appropriate, for the conduct of the flight.

14 C.F.R. § 1.1. A flight instructor remains as the pilot in command even when a student is in physical control over the aircraft. See McGee v. Cessna Aircraft Co., 139 Cal. App. 3d 179 (Cal. App. 1983).

Fourth, based on the undisputed facts, Mr. Woodworth was not merely a passenger on this flight. Therefore, based on the common ordinary definition of the term "pilot" the Court finds as a matter of law and regardless of who actually was in control of the plane at the time of the accident, Mr. Woodworth was a "pilot" in the aircraft at the time of the accident and the exclusion applies. The "moment of impact" is not the test for whether or not a person is a pilot or crew member in an aircraft. See Beckwith v. American Home Assurance Co. 565 F. Supp. 458 (W.D.N.C. 1983).

Alternatively, the Court finds as a matter of law, Mr. Woodworth was acting as a "crew member" at the time of the accident. The C.F.R. defines "crewmember" as "a person assigned to perform [sic] duty in an aircraft during flight time." 14 C.F.R. § 1.1. Even if the Court found Mr. Woodworth was not acting as a pilot on the flight, the Court finds he was still a crew member with assigned duties during the flight either as an examiner of Mr. Knudsen's flight skills, navigator of the flight, or the co-pilot or backup pilot to Mr. Knudsen. Mr. Woodworth's title as a certified flight instructor does not eliminate him from also being a pilot or crew member of the flight. See Keyser v. Conneticut General Life Ins. Co., 617 F. Supp. 1406 (N.D. Ill. 1985) (regardless of who was actually in control when plane crashed, the person was either a pilot or a crew member of the aircraft and the aviation exclusion applied); Ranger Ins. Co. v. Ram Flying Club, 653 P.2d 65 (Colo. App. 1982) (a student pilot and flight instructor who were both on board aircraft when it crashed, were involved in the operation of the plane and were properly excluded as crew members).

Because the Court finds the policy unambiguous, the language of the aviation exclusion applies and the Defendant is entitled to summary judgment as no benefits are due Plaintiff. Plaintiff's motion for summary judgment on the basis of material facts in dispute or an ambiguous policy are denied.

## Order

Being fully advised in the premises, the Court hereby orders that:

1) Defendant Stonebridge Life Insurance Company's motion for summary judgment (Docket No. 10) is GRANTED and the case is dismissed in its entirety.

2) Plaintiff Linda Woodworth's motion for partial summary judgment (Docket No. 16) is DENIED.

DATED: **October 3, 2007**

Honorable Edward J. Lodge
U. S. District Judge